**In the Matter of IRA HAUPT & CO., a Limited Partnership, Bankrupt.**

**KAMERMAN & KAMERMAN, Appellant,**

v.

**Charles SELIGSON, as Trustee in Bankruptcy of Ira Haupt & Co., a Limited Partnership, Bankrupt, Appellee.**

**No. 243, Docket 31668.**

United States Court of Appeals
Second Circuit.

Argued Jan. 3, 1968.

Decided Feb. 2, 1968.

Certiorari Denied May 20, 1968.

See 88 S.Ct. 1811.

Murray H. Paloger, New York City, for appellant.

Harvey R. Miller, New York City, (Seligson & Morris, New York City, on the brief), for appellee.

---

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

MOORE, Circuit Judge:

This appeal represents yet another of the many controversies arising out of the financial collapse and ensuing bankruptcy proceeding of Ira Haupt & Co. ("Haupt").[1] Haupt had been engaged in a general brokerage and commission business. In the fall of 1963, as a result of what has come to be known as the "Salad Oil Swindle," Haupt found itself in dire financial straits and was suspended from trading by the New York Stock Exchange. On March 23, 1964, an involuntary petition in bankruptcy was filed with the district court against Haupt.

Between December 1963 and March 1964, appellant had received transfers of property worth some $20,700 from Haupt. These transfers, occurring as they did within four months of the filing of the petition in bankruptcy, could have, if they met certain other requirements, constituted voidable preferences as described in Section 60 a of the Bankruptcy Act (the "Act"), 11 U.S.C. § 96 a,[2] and, if so, might be avoided by the Trustee in Bankruptcy under Section 60 b, 11 U.S.C. § 96 b.[3]

On March 30, 1964, a petition under Section 321 of the Act, 11 U.S.C. § 721, was filed with the District Court in the pending bankruptcy proceeding, purportedly on behalf of Haupt. This petition called for the initiation of a Chapter XI [§§ 301–399 of the Act] "arrangement" which is defined as "any plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his unsecured debts upon any terms." Section 306(1), 11 U.S.C. § 706(1).[4]

1. The facts with respect to the Haupt bankruptcy are set forth in prior decisions concerning the Haupt bankruptcy proceedings. In re Ira Haupt & Co., 379 F.2d 884 (2d Cir. 1967), affirming 240 F.Supp. 10 (S.D.N.Y.1965); Henry Ansbacher & Co. v. Klebanow, 362 F.2d 569 (2d Cir. 1966), affirming In re Ira Haupt & Co., 253 F.Supp. 97 (S.D.N.Y.1966); In re Ira Haupt & Co., 361 F.2d 164 (2d Cir. 1966); Ira Haupt & Co. v. Klebanow, 348 F.2d 907 (2d Cir. 1965), affirming, per curiam, In re Ira Haupt & Co., 234 F.Supp. 167 (S.D.N.Y.1964); Klebanow v. New York Produce Exchange, 344 F.2d 294 (2d Cir. 1965), reversing 232 F.Supp. 965 (S.D.N.Y.1964); In re Ira Haupt & Co., 343 F.2d 726 (2d Cir.), cert. denied, Klebanow v. Chase Manhattan Bank, 382 U.S. 890, 86 S.Ct. 182, 15 L.Ed.2d 148 (1965), affirming 234 F. Supp. 167 (S.D.N.Y.1964); In re Ira Haupt & Co., 274 F.Supp. 1007 (S.D.N.Y. 1967); In re Ira Haupt & Co., 252 F. Supp. 339 (S.D.N.Y.1966); In re Ira Haupt & Co., 240 F.Supp. 369 (S.D.N.Y. 1965); Klebanow v. Funston, 35 F.R.D. 518 (S.D.N.Y.1964).

2. The elements of a preferential transfer are described in Section 60 a(1):
"A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

3. Section 60 b provides:
"Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value: * * *"

4. The Bankruptcy Act is divided into 14 chapters. Of direct pertinence here are:
*Chapters I to VII*, consisting of Sections 1–72 of the Act, which are applicable to ordinary, or straight, bankruptcy proceedings whether voluntary or involuntary.

*Chapter XI*, consisting of Sections 301–399 of the Act, which provides for arrangements with creditors, both for corporations and individuals.

On June 10, 1964, the Referee in Bankruptcy granted a motion to dismiss the Chapter XI petition on the ground that the petition was not the voluntary act of Haupt in that Haupt's managing partner, Morton Kamerman, did not join in the Chapter XI petition. The Referee's order was affirmed, In re Ira Haupt & Co., 234 F.Supp. 167 (S.D. N.Y.1964), affirmed, 343 F.2d 726 and 348 F.2d 907 (2d Cir. 1965).

By order and decree dated June 26, 1964, Haupt was adjudged bankrupt. Appellee was appointed Trustee and has acted as such since he qualified on October 7, 1964.

Meanwhile, appellant had filed with the Bankruptcy Court a proof of debt in the amount of $11,600 against Haupt which has never been allowed or disallowed. By notice of motion dated May 20, 1966, the Trustee instituted a proceeding objecting to the claim of appellant and requesting that the claim be disallowed unless appellant surrendered and turned over to the bankrupt estate the sum of $20,700 with interest, which represented the voidable preference mentioned above.

Appellant moved to dismiss the Trustee's application and objection as time barred. In his original decision, the Referee agreed with appellant and dismissed the Trustee's application. However, on reargument, he reversed himself and held that the Trustee's application was timely. The District Court affirmed and appellant brought this appeal.

*Issue*

Both parties agree that the two-year statute of limitations of Section 11 e, 11 U.S.C. § 29 e, is applicable. See Herget v. Central National Bank, 324 U.S. 4, 65 S.Ct. 505, 89 L.Ed. 656 (1945). Section 11 e provides:

"A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not·expired at the time of the filing of the petition in bankruptcy. * * "

The issue on this appeal centers on the question of when does the period of limitation begin to run, i. e., what is the "date of adjudication" referred to in Section 11 e.[5] The Trustee argues that it is the actual date that Haupt was adjudged a bankrupt—June 26, 1964. Thus, the Trustee's claim made on May 20, 1966, would be within the two-year period.

Appellant claims that the "date of adjudication" is the date on which the Chapter XI petition was filed—March 30, 1964. In support of this contention, appellant relies on Section 302, 11 U.S.C. § 702,[6] which provides in part: that "the date of adjudication shall be taken to be the date of the filing of the peti-

---

The other chapters deal with the reorganization of railroads (Chapter VIII), the reorganization of municipal corporations (Chapter IX), the reorganization of other corporations (Chapter X), real property arrangements (Chapter XII), wage earners' plans (Chapter XIII), and Maritime Commission liens (Chapter XIV).

5. "Date of adjudication" is defined in Section 1(12), 11 U.S.C. § 1(12), as follows:
"'Date of adjudication' shall mean the date of the filing of any petition which operates as an adjudication, or the date of entry of a decree of adjudication, or if such decree is appealed from, then the date when such decree is finally confirmed or the appeal is dismissed."

6. Section 302 provides:
"The provisions of chapters I to VII [the 'straight bankruptcy provisions], inclusive of this title shall, insofar as they are not inconsistent with or in conflict with the provisions of this chapter [Chapter XI], apply in proceedings under this Chapter. * * * For the purposes of such application the date of the filing of the petition in bankruptcy shall be taken to be the date of the filing of an original petition under section 322 of this title, and the date of adjudication shall be taken to be the date of the filing of the petition under section 321 or 322 of this title except where an adjudication had previously been entered."

tion under section 321 or 322 of this Act except where an adjudication had previously been entered." If the "date of adjudication" is taken to be the date of the filing of the Chapter XI petition, March 30, 1964, the Trustee's application to avoid the preferential transfer, filed on May 20, 1966, was beyond the two-year period.

The Referee's opinion on the reargument and the District Court's opinion affirming the Referee's order, both determined that Section 391, 11 U.S.C. § 791, was applicable to this case to *suspend* the two-year statute of limitations of Section 11 e while the arrangement proceeding was pending. Section 391 provides:

> "All statutes of limitation affecting claims provable under this chapter [Chapter XI] and the running of all periods of time prescribed by this title in respect to the commission of acts of bankruptcy, the recovery of preferences and the avoidance of liens and transfers shall be suspended while a proceeding under this chapter is pending and until it is finally dismissed."

The District Court, however, also held that the "date of adjudication" which started the running of the statute of limitations of Section 11 e, was the date Haupt actually was adjudicated a bankrupt on June 26, 1964. In support of this holding, the district court relied upon Section 378(1), 11 U.S.C. § 778(1), which provides:

> "Upon the entry of an order directing that bankruptcy be proceeded with—
>
> (1) in the case of a petition filed under section 321 of this title, the bankruptcy proceeding shall be deemed reinstated and thereafter shall be conducted, so far as possible, as if such petition under this chapter had not been filed; * * *"

If the Chapter XI petition "had not been filed," the date of adjudication would be the date that Haupt was actually adjudged a bankrupt—June 26, 1964. The statute of limitations not beginning

to run until that date, the Trustee's application on May 20, 1966, was timely.

It is obvious that if a statute of limitations has not yet commenced to run, there will be no need to suspend its running. We believe that the court below was correct in holding that Section 378 (1) is controlling in this case and that the statute of limitations of Section 11 e did not begin to run until the date Haupt was actually adjudged a bankrupt. Consequently, we find it unnecessary to decide whether the Referee and the court below were correct in their holding that Section 391 operates to suspend the running of the statute of limitations.

*Section 302*

We cannot agree with appellant's contention that by virtue of Section 302, the statute of limitations began to run from the date of the filing of the Chapter XI petition. Section 302 provides in pertinent part:

> "*The provisions of chapters I to VII, inclusive, of this title shall,* insofar as they are not inconsistent with or in conflict with the provisions of this chapter, *apply in proceedings under this chapter* [Chapter XI]. * * * For the purposes of such application * * * the date of adjudication shall be taken to be the date of the filing of the petition under section 321 or 322 of this title except where an adjudication had previously been entered" (emphasis supplied).

The difficulty with appellant's contention is that, after a petition for an arrangement has been dismissed, we are no longer dealing with a proceeding under Chapter XI. Section 302 merely purports to indicate that certain provisions of the straight bankruptcy chapters are applicable to a Chapter XI proceeding, not *vice versa*. If this distinction is not apparent from the language of Section 302 itself, Section 301, 11 U.S.C. § 701, makes it quite clear:

> "The provisions of this chapter [Chapter XI] shall apply exclusively to proceedings under this chapter."

Appellant cites several cases in alleged support of its position. In re Setzler, 73 F.Supp. 314, 316 (S.D.Cal.1947); United States v. Sampsell, 193 F.2d 154, 155 (9th Cir. 1951); and Henkin v. Rockower, Inc., 259 F.Supp. 202, 204 (S.D.N.Y.1966). Appellant places great reliance upon Henkin v. Rockower. *Henkin* involved a Chapter XI arrangement initiated by the filing of a Section 322 petition. The petition for arrangement was dismissed and there was an adjudication of bankruptcy. Subsequently, the Trustee, as here, sued to avoid a preferential transfer, and the defense of the statute of limitations was raised. Although the court held that the statute of limitations had not run regardless of the date chosen to start its running, it did say that Section 302 was applicable and that the period began to run from the date of the filing of the Chapter XI petition. A significant difference between *Henkin* and the present case is that in *Henkin* the Chapter XI arrangement proceeding was initiated by a Section 322 petition whereas here it was initiated by a Section 321 petition.

Under Chapter XI, two types of petitions for arrangement may be filed. If no proceeding is then pending under Chapters I–VII, the petition is filed under Section 322, 11 U.S.C. § 722 of the Act.[7] But if a bankruptcy proceeding is pending, as in the present case, the petition for an arrangement is properly filed pursuant to Section 321, 11 U.S.C. § 721.[8]

Section 378 provides for the procedure to be followed after a petition for a Chapter XI arrangement has been dismissed.

"Upon the entry of an order directing that bankruptcy be proceeded with—

(1) in the case of a petition filed under section 321 of this title, the bankruptcy proceeding shall be deemed reinstated and thereafter shall be conducted, so far as possible, as if such petition under this chapter had not been filed; and

(2) in the case of a petition filed under section 322 of this title, the proceeding shall be conducted, so far as possible, in the same manner and with like effect as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered on the day when the petition under this chapter [Chapter XI] was filed; * * * *"

An analysis of Section 378 indicates that it, rather than Section 302, is the controlling provision *after* the Chapter XI proceeding has been dismissed.[9] While the decision in *Henkin* that the two-year period began to run on the date of the filing of the Chapter XI petition under Section 322 was not critical, since the court held the trustee's action to have been timely even on that basis, we disapprove of so much of the reasoning as relied on Section 302. We need not determine whether choice of the date of the filing of the Chapter XI petition rather than of actual adjudication was nevertheless correct on the basis of Section 378(2). Whatever may be the situation as to original Chapter XI petitions under Section 322, Section 378(2) by its terms does not apply to a Chapter XI petition under Section 321 in a pending bankruptcy. Where a Chapter XI pro-

7. Section 322 provides:
"If no bankruptcy proceeding is pending, a debtor may file an original petition under this chapter with the court which would have jurisdiction of a petition for his adjudication."

8. Section 321 provides:
"A debtor may file a petition under this chapter in a pending bankruptcy proceeding either before or after his adjudication."

Thus, a Chapter XI arrangement may be referred to as a "Section 321 case," or a "Section 322 case," depending upon which petition initiated the proceeding.

9. "Apart from §§ 338, 354, [not relevant here] and 378, the provisions of Chapter XI do not govern the future conduct of the proceedings after bankruptcy has been directed." 9 Collier, Bankruptcy, ¶ 10.10, p. 510 (1964 ed.).

ceeding has been initiated by a Section 321 petition, as in the present case, Section 378(1) is applicable and there is nothing in Section 378(1) to suggest that the date of adjudication should be any date other than the actual date that the person was adjudged a bankrupt.

"It is clear that in a case where bankruptcy proceedings were pending at the time the petition for arrangement was filed, that is to say a § 321 case, the Referee, where the plan for arrangement is not confirmed, must restore the status quo ante and proceed as though the petition for arrangement had not been filed." In re Johnson Construction, Inc., 182 F. Supp. 576, 577 (D.C.Cal.1960).

The other cases upon which appellant relies are also not persuasive. In United States v. Sampsell, supra, the court was concerned with the status of an indebtedness validly incurred by a debtor in possession *during* the administration of a proceeding under Chapter XI and, hence, quite properly referred to Section 302.

The statement from In re Setzler, supra, upon which appellant relies was mere dictum in that case. Furthermore, since there was no reference to any particular section of the Act, it is impossible to determine whether the court was referring to Section 302 or to Section 378.

Appellant has made a rather exhaustive survey of the bankruptcy law in an effort to show that "there is no relevant difference between a Section 321 and Section 322 Chapter XI petition because of the wording of Section 378." (Appellant's brief, p. 27.) Appellant's argument is that the differences in the wording of Sections 378(1) and 378(2) result from certain practical differences between the Section 321 petition and the Section 322 petition, but that both were intended to reach the same basic result, i.e., retroactive dates of adjudication. However, the difference in statutory language reflects the difference in the procedural posture of the two situations, and whatever might be the correct result

if this case arose from a Section 322 petition, there is no basis for treating it as if it were.

For the reasons stated above, the decision of the District Court is affirmed.