**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

**Securities Investor Protection Corporation, Applicant,**

v.

**SCHREIBER BOSSE & CO., INC., Defendants.**

**No. C 73–456.**

United States District Court, N. D. Ohio, E. D.

Aug. 6, 1973.

Theodore H. Focht, Wilfred R. Caron, James S. Armstrong, Jr., Securities Investor Protection Corp., Washington, D. C., for applicant.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

The issue before the Court for determination is whether the trustee and his attorney are "disinterested" within the meaning of 15 U.S.C. § 78eee(b)(3) and 11 U.S.C. § 558. For the reasons stated below, the Court finds that the trustee and his attorney are not disinterested within the meaning of 15 U.S.C. § 78eee(b)(3) and 11 U.S.C. § 558.

### A. FACTS

1. On May 7, 1973, this Court, upon selection of Securities Investor Protection Corporation ("SIPC"), appointed Mr. H. James Sheedy as trustee and the law firm of Squire, Sanders and Dempsey as attorney for the trustee pursuant to Section 5(b)(3) of the Securities Investor Protection Act of 1970 ("1970 Act"), 15 U.S.C. § 78eee(b)(3). The trustee is also a member of the firm of Squire, Sanders and Dempsey.

2. Although The Union Commerce Bank has its own legal department, the law firm of Squire, Sanders and Dempsey is and for several years has been the principal outside counsel for The Union Commerce Bank. Further, certain partners, past and present, hold directorships in The Union Commerce Corporation, the holding company of The Union Commerce Bank. A former partner of the firm is a director of The Union Commerce Bank.

3. Squire, Sanders and Dempsey has also occasionally represented The Cleve-

land Trust Company and Disbro & Company.

4. The Union Commerce Bank, The Cleveland Trust Company and Disbro & Company are creditors of the debtor, Schrieber Bosse & Co., Inc., holding claims allegedly in the sums of $39,000, $750 and $5,900 respectively. The claim of The Union Commerce Bank is allegedly secured and the value of the security is dependent upon the value of certain stock certificates held apparently as collateral by The Union Commerce Bank. The claims of The Cleveland Trust Company and Disbro & Company are allegedly unsecured claims.

5. Neither Squire, Sanders and Dempsey nor the trustee has acted as counsel for any of the aforementioned creditors of the debtor in connection with this proceeding and both have represented that they will not do so.

6. The debtor owes certain classes of creditors, namely, customers (subject to the protection by SIPC), secured creditors and unsecured creditors.

7. The assets of the debtor approximate $105,000 whereas the liabilities approximate $220,000.

8. A change, at the present time, in persons serving as trustee and counsel for trustee would not adversely affect the administration of the liquidation proceedings of the debtor.

## B. PRINCIPLES OF LAW

Under the 1970 Act, the Court, after it adjudicates that the customers of a securities broker or dealer are in need of protection, appoints a trustee and an attorney for the trustee as specified by SIPC. 15 U.S.C. § 78eee(b)(3). The appointment of the trustee and his attorney is qualified by the proscription that they be "disinterested" within the meaning of that term as defined in a Chapter X Corporate Reorganization of the Bankruptcy Act. 15 U.S.C. § 78eee(b)(3). The meaning of "disinterested" under a Chapter X Corporate Reorganization is found under Section 558, Title 11 of the United States Code.

That section, in pertinent part, provides:

> A person shall not be deemed disinterested . . . if . . .
>
> (4) it appears that he has, by reason of any other direct or indirect relationship to, connection with, or interest in the debtor . . . or for any reason an interest materially adverse to the interests of any class of creditors or stockholders.

There is no case law which applies the above provision in the context of a proceeding under the 1970 Act. However, in light of the Congressional intent that the disinterestedness of the trustee and his counsel be judged by the meaning of that term under a Chapter X Corporate Reorganization, the principles developed there can be applied here as well.

The standard of disinterestedness must be strictly applied. 6 Collier, Bankruptcy ¶ 7.03, at 1162 (14th ed.). "The trustee must be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters." In Re Realty Associates Securities Corporation, 56 F. Supp. 1007 (E.D.N.Y.1944).

One consideration in regard to the determination of "disinterestedness" is whether the trustee was employed by a creditor of the debtor whose claim against the estate is in dispute. In Re Chicago Rapid Transit Co., 93 F.2d 832, 838 (7th Cir. 1937). Another consideration is the nature of the proceedings wherein the services of the trustee are to be performed. *Id.* at 838.

It is clear that the proceedings under the 1970 Act are basically oriented toward the protection of the customer of the broker or dealer. This is in conformity with the basic purpose of the 1970 Act—that is, "to afford protection to public customers in the event broker-dealers with whom they transact business encounter financial difficulties and are unable to satisfy their obligations to their public customers". SEC v. Alan F. Hughes, Inc., 461 F.2d 974, 977 (2d Cir. 1972). In this vein, the trustee re-

turns specifically identifiable property to customers and distributes the single and separate fund to customers and pays them funds advanced by SIPC. 15 U.S.C. §§ 78fff(a)(1)(A), (B).

In addition to the customer orientation, the proceedings are also directed to the operation of the business of the debtor in order to complete open contractual commitments of the debtor, the enforcement of the rights of subrogation as provided under the 1970 Act and the ultimate liquidation of the business of the debtor. 15 U.S.C. §§ 78fff(a)(1), (2), (3), (4). Furthermore, except as inconsistent with the 1970 Act, Chapters I to VII and X of the Bankruptcy Act are applicable. 15 U.S.C. § 78fff(c)(1). The trustee for example, except in certain instances, is subject to the same duties as a trustee appointed under an ordinary bankruptcy. 15 U.S.C. § 78fff(b)(2). Under an ordinary bankruptcy, the trustee has the right, with the approval of the Court, to compromise any controversy arising in the administration of the estate upon such terms as he may deem to be for the best interest of the estate. 11 U.S.C. § 50. Under an ordinary bankruptcy, a trustee is charged, among other things, with the duty of examining all proofs of claim and objecting to the allowance of such claims as may be improper. 11 U.S.C. § 75(a)(8).

In summary, the disinterestedness of the trustee and his attorney must be examined not only in light of the customer orientation of the proceedings but also in view of the other aspects of the proceedings including the application of the bankruptcy laws.

## C. DISCUSSION

The facts in this case indicate that the law firm of Squire, Sanders and Dempsey has a close connection to one of the creditors of the debtor—namely, The Union Commerce Bank. The law firm, for one, is the principal outside counsel for The Union Commerce Bank. A partner of the law firm is a director of the holding company for The Union Commerce Bank and a former partner is a director of the holding company and The Union Commerce Bank itself. The law firm thus has a dual relationship with The Union Commerce Bank—on the management level and as its attorney.

The Union Commerce Bank, moreover, has a claim against the debtor which amounts to approximately 18% of the liabilities of the debtor. The claim is allegedly secured by certain stock. The claim of The Union Commerce Bank is therefore a material one and is adverse to those creditors whose claims are unsecured.

The trustee and his attorney are thus related to a creditor whose claim is a substantial and adverse one. The trustee and his attorney can be placed in a posture of potential conflict with respect to this claim. On the one hand, they are charged with the duty of recommending the allowance, advising compromise or objecting to claims. On the other hand, it is apparent that the law firm will be concerned with remaining in the good graces of its client. As a consequence of this situation, there is an appearance that the trustee and his counsel have a personal interest which might be reflected in their decisions concerning the liquidation proceedings. The Court cannot overlook this.

## D. JUDGMENT AND ORDER

Accordingly, the Court concludes that the trustee and his counsel are not disinterested. The Court therefore directs that the trustee and his attorney be removed. However, the removals will not become effective until a substitute trustee has qualified by posting the appropriate bond and until substitute counsel has been appointed. The Court further directs SIPC to select a trustee and an attorney for him within ten days of this order.

It is so ordered.